IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LIVE FACE ON WEB, LLC, <br> A Pennsylvania company, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) <br> ) |
| v. | ) No. 16-cv-8608 <br> ) |
| CREMATION SOCIETY OF ILLINOIS, INC., <br> d/b/a PETS ARE FAMILY, TOO <br> CREMATION SERVICES; OLSON <br> BURKE/SULLIVAN FUNERAL & <br> CREMATION CENTER; ILLINOIS <br> CREMATION CENTERS, an Illinois <br> corporation, and KATIE SULLIVAN, an <br> individual, | ) Honorable John Robert Blakey <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**

Defendants, Cremation Society of Illinois, Inc., Illinois Cremation Direct, Inc. and Katherine Sullivan Frideres, by and through their attorneys, Tressler LLP, hereby submit their Memorandum support of their Motion for Attorneys' Fees, Costs and Expenses ("Motion").

**INTRODUCTION**

After nearly five years of litigating baseless claims and engaging in litigation misconduct, Plaintiff moved to voluntarily dismiss this case with prejudice, and attempted to get the Court to do so with an order denying Defendants attorneys' fees and costs. The Court dismissed the case, but rejected Plaintiff's request to deny Defendants fees and costs, declining to consider the question of fees at that time because it was premature. (ECF 247). In that order, the Court directed that should Defendants elect to pursue a fee motion, the parties shall comply with Local Rule 54.3. In compliance with that order, this Motion complies with Local Rule 54.3.

In light of the strong presumption that prevailing Defendants should be awarded fees in copyright infringement cases, along with Plaintiff's objective unreasonableness in filing and maintaining this litigation for almost five years, coupled with the need for compensation and deterrence of such cases, the Court should award Defendants reasonable attorneys' fees, costs and expenses in defending against this action. Not only did Plaintiff push forward with untimely claims, but it also sought damages that were wholly unsupported by the evidence. Defendants' investigation demonstrated that Plaintiff's alleged infringement of a specific version of its code – out of more than 20 known versions that were published or copyrighted – that was not the subject of the three licenses it claimed were the basis of its demand for hundreds of thousands of dollars in damages as a bludgeon to try and extort a six-figure settlement from Defendants. In reality, even if Plaintiff had timely asserted its claims and been able to prove infringement, it would have been entitled to just the $259.95 it charged to license every other version of its software to every other of its customers, including to Defendants. Defendants are also entitled to fees, costs and expenses pursuant to Federal Rule of Civil Procedure 68. Defendants made an offer of judgment to Plaintiff that Plaintiff failed to accept and it recovered nothing in this case.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Live Face on Web, LLC ("LFOW") is a Pennsylvania company based in Southampton, Pennsylvania. (ECF 212 p.1). Plaintiff is owned by natives of Russia and Ukraine, Eduard Shcherbakov ("Shcherbakov") and Yuri Getsky ("Getsky"). LFOW is no longer an operating business.[1] LFOW licensed software that allowed companies to display a video of a host

---

[1] Shcherbakov and his new companies, Fleet 18 and Rey Logistics operate from the same location where LFOW previously operated, have recently come under scrutiny for racial discrimination for stereotyping black people, including but not limited to (1) making comments about black people liking fried chicken and collard greens; (2) implying that a black dispatcher working in the office was not "black enough;" (3) telling the plaintiff to "speak black" to black truck drivers coming to interview; (4) informing the plaintiff that he only needed two black people in the office, one dispatcher and one recruiter; and (5) Scherbakov does not like black people. (*Eldridge v. Shcherbakov, et al.*, U.S. District Court for the Eastern District of Pennsylvania, case no. 20-cv-03209, ECF 8 ¶¶ 26-28).

2

who introduced websites to online visitors. In January 2014 Plaintiff began filing lawsuits against Tweople and Tweople's customers alleging infringement of copyright in its software. LFOW is a serial copyright infringement litigant with the financial means to finance massive numbers of lawsuits and extract settlements or take defaults on those who do not fight back.

Defendants Cremation Society of Illinois, Inc. ("CSI") and Illinois Cremation Centers ("ICC") (collectively "Companies") are small family-owned and operated local companies based in Homewood, Illinois owned by Gerald Sullivan ("Gerry") who operate in the funeral industry. His daughter, Katherine Sullivan Frideres ("Katie") works for the Companies in marketing. (*Id.*).

Prior to 2011 CSI had a video spokesperson that it used on its website that it obtained from a company called Prism. *(Id.)*. In 2011 the Companies, through their marketing consultant, Lynn Elliott ("Elliott"), ordered several talking hosts from Yakking Heads, which later changed its name to Tweople, for one-time payments for $198 each for several of their websites. (ECF 215 p.2). In 2014 the links that Tweople provided to the Companies stopped working. Elliott then searched for Tweople's website and found that it was no longer online. (*Id.*). Elliott then searched for talking hosts and found LFOW which advertised a "Single Pay" license for its "virtual greeter" software for a one-time payment of $327.57 for use on a website. (*Id.*). The Companies purchased two licenses for LFOW's single-use product. (*Id.*). The LFOW talking hosts then went live on the Companies' websites in March 2015 and performed the same function as the Tweople talking hosts had performed. (*Id.*).

After being a loyal LFOW customer for more than a year, the Companies were shocked that with no prior notice they were served with LFOW's Complaint in this case in September 2016 alleging that they had infringed LFOW's copyright. Plaintiff sought (1) preliminary and final orders finding Defendants liable for copyright infringement, (2) actual damages, (3) Defendants'

3

profits, (4) statutory damages of up to $150,000 for each work infringed, and (5) attorneys' fees and costs. (ECF 83 p.12). Plaintiff later disclosed actual damages of at least $483,000, plus disgorgement of Defendants' profits. (Ex. A). Although Defendants believed LFOW's claims were frivolous, in order to avoid the cost of litigation, they offered Plaintiff $5,000 to settle this case. (Ex. B). Plaintiff responded with a $455,400 demand. (*Id.*). On September 12, 2017, Defendants served Plaintiff with an Offer of Judgment with a $5,000 offer (Ex. C), which Plaintiff rejected.

In April 2018 Plaintiff filed a separate lawsuit against Defendants, and also Gerry, in the Eastern District of Pennsylvania, case no. 18-cv-01718, alleging claims for copyright infringement and breach of contract. After Defendants filed a motion for summary judgment in that case, Judge Schiller held a hearing and admonished Plaintiff's counsel for the frivolous nature of Plaintiff's claims. Soon thereafter Plaintiff dismissed those claims with prejudice. (E.D.Pa. ECF 109).

In late 2019 Defendants learned from a related case filed by Plaintiff, *Live Face on Web v. Rockford Map Gallery*, Case No. 17-539, pending in the District of Delaware, that Plaintiff's damages theory in these various related cases was fabricated. Plaintiff represented in these cases, including in this case and in *Rockford*, that the three licenses on which its damage claims were based, Lexus, Veretech and KBB, were all for version 7.0.0 from Plaintiff. (ECF 152 pp.4-5). However, Defendants later discovered that these licenses were actually for a different version of the JavaScript, version 7.0.1, ***not*** 7.0.0. (ECF 218 pp.3-4).[2] On September 30, 2020, the *Rockford* court granted the defendants' motion for summary judgment. *Live Face on Web v. Rockford Map Gallery*, 2020 WL 5821750 (D.Del. Sept. 30, 2020). The defendants in that case subsequently

---

[2] There is no evidence that Kelley Blue Book ever used LFOW's software or ever paid any licensing fees to LFOW. In addition, the monthly fees paid by Lexus and Veretech to LFOW were primarily for hosting and streaming the virtual greeter videos on hundreds or thousands of separate websites.

4

filed a motion for attorneys' fees, which remains pending. Knowing the cat was out of the bag, Plaintiff's counsel then became desperate to try to settle this case. Plaintiff's counsel sent numerous emails to Defendants' counsel seeking to settle this case, including possibly "walking away" from its claims in this case. (Ex. D).

Defendants filed their summary judgment motions on February 12, 2021. (ECF 211-229). Knowing it had no reasonable basis to oppose those motions, Plaintiff filed motions for extension to respond to them and then filed a motion to voluntarily dismiss this case with prejudice and with each side bearing its own fees and costs. (ECF 230, 233, 236). The Court granted that motion on May 26, 2021, and declined to consider the question of fees because the issue was premature. (ECF 247).

## ARGUMENT

**A.     Defendants Are Entitled to Their Attorneys' Fees Under the Copyright Act**

Section 505 of the Copyright Act provides that a court "in its discretion may allow the recovery of full costs" to any party in a copyright action, and "the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505.  "A court may not treat prevailing plaintiffs and prevailing defendants any differently; defendants should be 'encouraged to litigate [meritorious copyright defenses] to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement.'" *Kirtsaeng v. John Wiley & Sons,* 136 S.Ct. 1979, 1985 (2016).

**1.     There is a Very Strong Presumption Defendants are Entitled to Fees and Costs**

The party responsible for creating legal costs must bear them itself in the end. *Riviera Dist. v. Jones*, 517 F.3d 926, 929 (7th Cir. 2002).  A fee award spares prevailing defendants the "Pyrrhic victory" of winning the case but still losing money. *Klinger v. Conan Doyle Estate,* 761 F.3d 789,

791-92 (7th Cir. 2014). The purposes of the Copyright Act are served when "[p]arties with strong positions are encouraged to stand on their rights, given the likelihood that they will recover fees from the losing (*i.e.*, unreasonable) party." *Kirtsaeng,* 136 S.Ct. at 1985. "For without the prospect of such an award, the party might be forced into a nuisance settlement or deterred altogether from enforcing his rights." *Assessment Techs. of WI v. WIREdata,* 361 F.3d 434, 437 (7th Cir. 2004). Section 505 of the Copyright Act encourages a defendant to pursue meritorious copyright defenses without fear of burdensome attorneys' fees and costs. *Fogerty v. Fantasy,* 510 U.S. 517, 527 (1994); *Woodhaven Homes & Realty v. Hotz,* 396 F.3d 822, 824 (7th Cir. 2005). "[P]ost-*Fogerty*, courts have increasingly awarded attorneys' fees to prevailing defendants." *Warren Pub. v. Spurlock*, 2010 WL 760311, *3 (E.D.Pa. Mar. 3, 2010).

Defendants are the prevailing parties in this litigation. A prevailing defendant in a copyright suit is presumptively entitled to an award of fees. *Edgenet v. Home Depot*, 658 F.3d 662, 667 (7th Cir. 2011). A dismissal of a plaintiff's claims with prejudice entitles the defendant to a presumption of fees under Section 505, regardless of the basis for dismissal. *Mostly Memories v. For Your Ease Only*, 526 F.3d 1093, 1099 (7th Cir. 2008). This presumption is **very strong**. *DeliverMed Holdings v. Schaltenbrand*, 734 F.3d 616, 625 (7th Cir. 2013) ("As a consequence of their successful defense of an infringement suit, Defendants are entitled to a 'very strong' presumption in favor of receiving attorneys' fees."); *Assessment Techs.,* 361 F.3d at 436-37; *Klinger,* 761 F.3d at 791; *Woodhaven Homes,* 396 F.3d at 824; *Eagle Services v. H2O Industrial*, 532 F.3d 620 (7th Cir. 2008); *Bell v. Carmen Commercial Real Estate Svs.*, 2020 WL 5016891, *6 (S.D.Ind. Aug. 25, 2020); *Bosch v. Ball-Kell*, 2007 WL 2994085 (N.D.Ill. Oct. 11, 2007). "This is no less true when a case is dismissed because the plaintiff 'threw in the towel', – that is, where the dismissal is on the plaintiff's own motion." *Craig v. Popmatters Media,* 448 F.Supp.3d 844, 847 (N.D. Ill. 2020); *Bell v. Lantz*, 825 F.3d 849, 850 (7th Cir. 2016).

### 2. The Relevant Factors Also Weigh in Favor of Awarding Fees

Courts analyzing fee requests under Section 505 are guided by several nonexclusive factors, frivolousness, motivation, objective reasonableness and the need to advance considerations of compensation and deterrence. *Fogerty*, 510 U.S. at 534. Section 505 grants courts wide latitude to award attorneys' fees based on the totality of circumstances in a case. *Kirtsaeng*, 136 S.Ct. at 1985.

#### a. This Action Was Objectively Unreasonable

Although objective unreasonableness is an important factor, it is not a controlling one. *Kirtsaeng*, 136 S.Ct. at 1988. As set forth in Defendants' summary judgment motions, Plaintiff's claims were objectively unreasonable for numerous reasons. First, Plaintiff's claims were time barred (ECF 214-215), just like the similar claims Plaintiff filed in the *Rockford* case that were found to be time barred. The subject talking hosts appeared on the Companies' websites back in 2011 and 2012, but Plaintiff did not file its claims with respect to the websites *illinoiscasketdepot.com*, *illinoiscremationcenters.com*, *petsarefamilytoo.net* and *obsfuneralandcremation.com* until September 1, 2016 (ECF 1), and did not file its claims with respect to *cremation-society.com* and *chicagoveteranscare.com* until May 2018, long after the three-year statute of limitations had expired. (ECF 215). Second, Plaintiff's copyright is invalid. Defendants moved for summary judgment seeking a finding of invalidity because it contains public domain material, failed to correctly identify the author(s) of the work, violate the merger and *scenes a faire* doctrines, assert copyright for portions of the LFOW Software already protected by trademark, attempted to copyright an idea, and the registration for version 7.0.0 disclaims code included in prior versions of LFOW's software. (ECF 222). Third, Defendants did not infringe Plaintiff's copyright. Defendants never copied or distributed LFOW's source code. There is no evidence of any direct infringement by a third party, no evidence that the Companies received any

7

direct financial benefit from the alleged infringement and no evidence they had any knowledge of the alleged infringement. (ECF 226). Fourth, there was no basis for Plaintiff's claim against Katie, who was merely an employee of the Companies. Katie did not procure the subject software, and in fact she was not in favor of the Companies using the talking hosts. Plaintiff's attempt to establish liability against Katie for her merely being the registrant on the Companies' websites was also baseless. (ECF 212). Fifth, Plaintiff's damages claims were also objectively unreasonable. Despite the fact that Plaintiff licensed its talking hosts, including to the Companies, for a one-time fee of less than $400 per site, Plaintiff improperly sought damages for lost licensing fees of nearly $500,000. Plaintiff's damage theory in this case was wholly untethered to the facts of this case, and relied on licenses for a different version of Plaintiff's JavaScript code than what is at issue here, for an entirely different use on thousands of websites, and thus was based on improper speculation. (ECF 218).

### b. LFOW's Motivation in Filing this Action Was Improper

LFOW's motivation in filing this suit was never about vindicating any rights in a few hundred lines of JavaScript code. LFOW's sole motivation, both here and in the 140-plus other cases LFOW filed, was to extract a settlement from Defendants. This is not a proper motivation under the law. *Craig,* 448 F.Supp.3d at 847; *Zindel v. Fox Searchlight Pictures,* 2018 WL 6074566, *5 (C.D.Cal. Oct. 26, 2018); *Hall v. Swift,* 2018 WL 3203045, *5 (C.D.Cal. Apr. 16, 2018). The protracted nature of the litigation is another consideration as to whether to award fees. *Budget Cinema v. Watertower Assoc.*, 81 F.3d 729 (7th Cir. 1996). Here the fact that this litigation proceeded for nearly five years also favors Defendants being awarded their fees.

### c. The Need to Advance Considerations of Compensation and Deterrence Are Met With a Fee Award

An award of attorneys' fees here is warranted by considerations of compensation and deterrence and promotes the purpose of the Copyright Act. *Kirtsaeng*, 136 S.Ct. at 1986-87

8

("When a litigant – whether plaintiff or defendant – is clearly correct, the likelihood that he will recover fees from the opposing (*i.e.*, unreasonable) party gives him an incentive to litigate the case all the way to the end. . . . [T]hose results promote the Copyright Act's purposes, by enhancing the probability that both creators and users (*i.e.*, potential plaintiffs and defendants) will enjoy the substantive rights the statute provides."). "The availability of compensation to a 'clearly correct' party provides 'an incentive to litigate the case all the way to the end,' thereby serving the goals of the Copyright Act and strengthening the body of copyright law." *Kirtsaeng*, 139 S.Ct. at 1986. Here, an award of attorneys' fees to Defendants would promote the goals of the Copyright Act, as articulated in *Kirtsaeng*, to compensate Defendants for their fortitude in defending against meritless claims, and deter Plaintiff from pursuing unreasonable or frivolous claims in any future litigation.

As for deterrence in exercising its discretion to award fees, the court "must take into account a range of considerations beyond the reasonableness of litigating positions." *Id.* at 1989. For example, the court may award fees "to deter repeated instances of . . . overaggressive assertions of copyright claims, again even if the losing position was reasonable in a particular case." *Id.* Further, a court may order fee-shifting because of a party's litigation misconduct, whatever the reasonableness of its claims or defenses. *Viva Video v. Cabrera*, 9 Fed.Appx. 77, 80 (2d Cir. 2001). Although LFOW presents itself as a sophisticated internet marketing company, in reality its primary business in the past several years has been copyright litigation, as demonstrated by the fact that it has not updated its website since 2015 and the majority of the websites on its "Samples" page are dead links. LFOW has filed more than 140 cases against nearly 300 defendants based on Tweople's alleged infringement of the LFOW copyright, the vast majority of which led to quick settlements from the defendants or their insurers to avoid the cost of litigating in the face of

9

LFOW's extortionate and meritless damages claims. Most of those cases never got beyond the pleading stages, leaving the dubious merits of LFOW's claims untested. LFOW is among those "in recent years, opportunistic holders of copyrights, patents, and other intellectual property have developed unsavory reputations for 'trolling', bringing strategic infringement claims of dubious merit in the hope of arranging prompt settlements with defendants who would prefer to pay modest or nuisance settlements rather than be tied up in expensive litigation." *Design Basics v. Lexington Homes*, 858 F.3d 1093, 1097 (7th Cir. 2017). Courts under similar circumstances have awarded fees to defendants. *Design Basics v. Kerstiens Homes & Designs,* 1 F.4th 502 (7th Cir. 2021) (affirming award of attorneys' fees to the defendants in the amount of $518,457 through summary judgment, noting the "strong presumption" that prevailing defendants were entitled to fees under Section 505 and noting "cottage industry of opportunistic copyright holders – earning the derisive moniker 'intellectual property trolls' – has emerged, in which a troll enforces copyrights not to protect expression, but to extract payments through litigation."); *In re Dex Media*, No. 17-265-MN, ECF 41 at 17 (D.Del. Aug. 26, 2020) ("Here, a grant of fees and costs is appropriate to deter [Plaintiff] from further litigation. [Plaintiff] has shown that it is 'in the business of litigation.'"); *see also Kirtsaeng*, 136 U.S. at 1989 (explaining that deterrence may be necessary to deter repeated assertion of copyright claims, "even if the losing position was reasonable").

Plaintiff also engaged in discovery misconduct in this case. Because of their refusal to answer basic deposition questions, Defendants were forced to file numerous motions to compel and depose Shcherbakov and Getsky three separate times, after which they still failed to properly respond to proper questions, all of which is contained in Defendants' motion for costs. (ECF 208). The Court also was required to take the extraordinary step to force Shcherbakov and Getsky to travel from Pennsylvania to Illinois to personally appear in Court for their misconduct, at which

10

time the Court admonished them to properly answer Defendants' deposition questions. (ECF 177, 179). However, despite that proper admonishment, Shcherbakov and Getsky failed to comply with the Court's direction and refused to properly answer questions. (ECF 208).

### d. Other Factors Supporting an Award of Reasonable Attorneys' Fees

Although Plaintiff voluntarily dismissed its claims, Defendants are fully confident that they would have prevailed on their defenses and further demonstrated that Plaintiff was overaggressive in asserting its claims here, including a wholly meritless claim for damages. LFOW has represented throughout this litigation, and in all the other related cases, that its entire damages claim is based on a specific version of its JavaScript code, v.7.0.0, that is one of more than 20 copyrighted versions. LFOW claimed that this version – and only this version – was licensed to three parties for monthly fees up to $6,900 per month. All other versions, which performed the same functionality, were licensed to LFOW customers for a one-time fee of less than $400 with no recurring charges, as advertised on LFOW's website. Not only was there no evidence produced by LFOW during discovery showing that those customers actually used v.7.0.0, Defendants' investigation demonstrated conclusively that those three customers were using a different version that was also licensed to other small business customers of LFOW for its standard licensing fee of $259.95. Moreover, the licenses to the three customers (Lexus, Kelly Blue Book, and Veretech) contain no mention of any special version of the code, and certainly no mention of the special v.7.0.0 code. There also was no evidence that Kelly Blue Book ever used any LFOW code at all, and Defendants' technical expert concluded that the only evidence showed that Lexus and Veretech were not using the special v.7.0.0. Nor was there any evidence of any payments from Kelly Blue Book or Lexus under the purported licenses. (ECF 211-219). All of this evidence was unrebutted by LFOW's experts, who either ignored it or were never presented with it. In short, LFOW purposefully misrepresented to this Court – and to courts in dozens of other cases – that

Lexus, Kelly Blue Book, and Veretech had licenses to the asserted v.7.0.0 and exclusively used that version under the licenses, if they used the LFOW code at all. It also appears that the only reason LFOW asserted this particular version of its code, versus the others that are virtually identical and perform the same functionality, is that it is the only version that it never licensed to any other customers for $259.95. LFOW used those licenses, which were completely devoid of any similarity to the use made by Tweople or its customers, to justify its request for six-figure damages claims against small businesses like those here, knowing full well that at most it could recover little more than the $259.95 for which it licensed the same code to hundreds of other LFOW customers. Such objectively unreasonable, unsupportable, and frivolous assertions of damages further demonstrate LFOW's bad faith in this litigation and further support an award of attorneys' fees here. *Fogerty,* 510 U.S. at 534 (bad faith need not be shown for an award of attorneys' fees, but supports such an award).

### e. Defendants Are Also Entitled to Fees and Costs under Rule 68

Rule 68 provides that a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms if the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made. Although Rule 68 by its terms only applies to costs, the Supreme Court has held that attorney's fees are included within the definition of "costs" for purposes of Rule 68 when the underlying statute includes attorney's fees in its definition of costs. *Marek v. Chesny*, 473 U.S. 1 (1985). Defendants offered Plaintiff $5,000 to settle this case on September 12, 2017. (Ex. C). Plaintiff did not obtain a judgment more favorable than Defendants' offer of judgment. Thus, an award of costs and fees is required under Rule 68 for all fees and costs incurred after September 12, 2017. *See Bell v. Taylor,* 2016 WL 4592205, *7 (S.D.Ind. Sept. 2, 2016).

B. **<u>Defendants' Requested Fees are Reasonable</u>**

The Court should award Defendants their reasonable attorneys' fees in defending against this action. Reasonable attorneys' fees are determined by the "lodestar" method, pursuant to which the Court first determines a reasonable number of hours for the work expended, then multiplies those hours by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). The court then can increase or decrease the award based on certain other factors, such as the complexity of the action, the nature of the claims raised, the amount of the recovery sought, the litigation tactics used, the qualifications of counsel, and the results achieved. *Lieb v. Topstone Industries*, 788 F.2d 151, 156 (3d Cir. 1986). Using the loadstar method, Defendants respectfully request their reasonable attorneys' fees in the amount of $140,935.20 through May 24, 2021.

### 1. The Hours Expended are Reasonable

As set forth in the accompanying declaration, Defendants' counsel expended 46.9 hours defending this action, and support staff spent an additional 44.60 hours. (Ex. E, Borcia Dec. ¶ 3). The hours expended by Defendants are reasonable for a case that dragged on unnecessarily for nearly five years. Defendants did not expend more hours than were necessary litigating this case.

### 2. The Hourly Rates are Reasonable

The appropriate hourly rate for an award of fees is "'the rate that lawyers of similar ability and experience in their communities normally charge their paying clients for the type of work in question.'" *Harper v. City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir. 2000). The hourly rate for Defendants' counsel is $295 per hour. Plaintiff does not object to these rates.

### 3. Fees for Preparing this Motion

Finally, Plaintiff is entitled to reasonable attorney fees for the time spent in litigating the instant fee petition and preparing its bill of costs. Courts have recognized that "when a prevailing party is forced to litigate to obtain a fee award, a component of that award may include a reasonable

13

fee for the time expended in preparing and litigating the fee petition." *Trustees of Chicago Plastering Institute Pension Trust v. Cork Plastering*, 2008 WL 728897, *6 (N.D.Ill. Mar. 18, 2008). In order to draft the instant memorandum in support of Defendants' fee petition, their attorneys conducted legal research, gathered evidence to support costs incurred, compiled billing records, prepared declarations, and worked on several drafts of the instant memorandum. According to case law in this district, Defendants are entitled to be reasonably compensated for that time. *Id.*

**C.** **Defendants Are Also Entitled to Reimbursement for Costs**

Defendants are entitled to costs. *Popeil Bros. v. Schick Elec.,* 516 F.2d 772, 774 (7th Cir. 1975). Defendants seek the following costs:

| COSTS | TOTAL |
|---|---|
| Printing | $60.70 |
| Court Transcripts | $40.15 |
| Depositions | $5,717.05 |
| Interpreters | $1,945.69 |
| TOTAL | $7,763.59 |

(Ex. E ¶ 5).

**D.** **Defendants Are Also Entitled to Reimbursement for Non-Taxable Expenses**

Finally, Defendants are entitled to non-taxable expenses. *Indigo Old v. Guido*, 2021 WL 1561710 (N.D.Ill. Apr. 21, 2021). Expert expenses are recoverable. *Chambers v. Ingram,* 858 F.2d 351, 360 (7th Cir. 1988). Defendants seek the following expenses:

| | |
|---|---|
| Travel for Deposition of Lynn Elliott (11/9/18)<br><br>**EXPERT WITNESSES** | $911.02 |

| | |
|---|---|
| Digital Miracles (Nancy Miracle) | $22,290.50 |
| Wayne Norris | $11,800.00 |
| Robinwood Consulting (Mark A. Peterson) | $15,000.00 |
| TOTAL | **$50,001.52** |

(Ex. E ¶ 6).

## CONCLUSION

WHEREFORE, Defendants, Cremation Society of Illinois, Inc., Illinois Cremation Direct, Inc. and Katherine Sullivan Frideres, respectfully request the Court award them attorneys' fees, expenses and costs as set forth in their Motion and herein.

    CREMATION SOCIETY OF ILLINOIS, INC.,
    ILLINOIS CREMATION DIRECT, INC. and
    KATHERINE SULLIVAN FRIDERES

    By: /s/ James K. Borcia
        One of Their Attorneys

James K. Borcia (jborcia@tresslerllp.com)
TRESSLER LLP
233 South Wacker Drive, 61st Floor
Chicago, Illinois 60606
(312) 627-4000

(443-331) 4823-8560-6382, v. 1

15